UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DUKE ENERGY INTERNATIONAL PERU INVESTMENTS NO. 1 LTD., <br><br> Petitioner, <br><br> v. <br><br> REPUBLIC OF PERU, <br><br> Respondent. | Civil Action No.  11-1602 (JEB) |

## MEMORANDUM OPINION

Petitioner Duke Energy International Peru Investments No. 1 Ltd. (DEI) filed this action to confirm an Award issued by an international arbitrator pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (ICSID Convention).  Respondent Republic of Peru now brings the instant Motion to Dismiss or, in the alternative, to remand the dispute to the arbitrator for further clarification.  Respondent first argues that Petitioner has failed to state a claim on which relief can be granted.  It also contends that, in the alternative, the Award is ambiguous and should be remanded to the arbitrator for clarification or dismissed under the doctrine of *forum non conveniens*.  Because the Court disagrees and finds that Petitioner has sufficiently pled a claim for relief and that remand is not warranted, it will deny Respondent's Motion.  The Court further holds that because the Award is clear and requires no further determination, it need not reach Respondent's arguments under the doctrine of *forum non conveniens*.

1

**I.     Background**

The background facts in this case are largely agreed upon. The underlying dispute here concerns a tax assessment issued by the Peruvian tax authority, the Superintendencia Nacional de Administracion Tribunaria (SUNAT). During the 1990s, the Peruvian government made certain legal guarantees to foreign investors to encourage their investment. See Mot. at 2. These guarantees were memorialized in "legal stability agreements" (LSAs), including the one between Peru and DEI at issue here. Id. at 3. In this case, DEI agreed to make a capital contribution to Egenor S.A.A., a recently privatized Peruvian electricity company, in exchange for legal stability with respect to a variety of issues, including income taxes. Id. The LSA also required that disputes arising under the agreement be submitted to an ICSID Tribunal for arbitration. Id.

Between 1999 and 2002, DEI and its affiliates acquired nearly 100 percent ownership in Egenor S.A.A., which became known as DEI Egenor. Id. On November 26, 2001, SUNAT assessed a tax liability against DEI Egenor of $48 million, claiming Egenor S.A.A. had underpaid its taxes from 1996 to 1999. Id. DEI Egenor exhausted its administrative remedies in Peru and ultimately paid a portion of the assessment. Id.

In October 2003, DEI initiated arbitration proceedings against Peru before an ICSID Tribunal, claiming that SUNAT's assessment violated the tax-stability provisions of the 2001 LSA. Id. at 4. The Tribunal found for DEI as to certain of its claims, and it issued an award on August 18, 2008, ordering Peru to pay damages in the amount of $18,440,746 plus interest. See Amended Pet., Declaration of Andrew H. Marks, Exh. B (Award), ¶ 488. Peru challenged the Tribunal's decisions on jurisdiction and damages before an *ad hoc* committee appointed under the ICSID, which rejected those challenges in March 2011 and let the Award stand. See Marks Decl., Exh. D (Annulment Decision), ¶ 269.

Meanwhile, on February 1, 2008, Law 29191 became effective, amending the Peruvian Tax Code to modify the interest rates used on refunds paid to taxpayers. See Pet., ¶¶ 14-15; Amended Pet., Declaration of Rocío V. Liu Arévalo, ¶¶ 7-9. As amended, Article 38 of the Peruvian Tax Code provides for two interest rates for such refunds, one for payments "made as a consequence of any document issued by [SUNAT]" and one for all other overpayments. See Pet., ¶¶ 14-15. Following the March 2011 committee decision, Peru tendered payment of the damages called for in the Award, but paid only interest as calculated using the rate in effect prior to the enactment of Law 29191. Id., ¶ 18. DEI accepted payment of the undisputed amount, but reserved the right to pursue legal action to collect what it alleges is the remaining balance. Id., ¶ 19.

On September 6, 2011, DEI brought this action to confirm the Award, seeking, *inter alia*, a judgment awarding DEI the difference between the interest required by amended Article 38 and the interest already paid. See Pet., ¶¶ 26-29. Peru has now filed this Motion to Dismiss or Remand, arguing that the Petition fails to state a claim on which relief can be granted under Fed. R. Civ. P. Rule 12(b)(6), or even if it does, the case should be remanded to the ICSID Tribunal for further proceedings or dismissed under the doctrine of *forum non conveniens*.

## II.     Legal Standard

In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation,"

nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). The notice-pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

### III. Analysis

#### A. Failure to State a Claim

Peru initially argues that DEI's Petition should be dismissed for failure to state a claim "because the Petition acknowledges that Peru has paid the full amount of the award according to

the intention of the ICSID Tribunal." Mot. at 6.  In the Court's view, however, the Petition does no such thing.  While DEI does not dispute that Peru has paid the full amount of <u>damages</u>, it also alleges that Peru has failed to pay the full amount of <u>interest</u>.  The latter issue is the basis for its Petition.

Peru nonetheless argues that it has fulfilled the Award because it paid interest at a rate of 0.30% per month.  <u>Id.</u>  It suggests this rate must satisfy the Award because it was "the only . . . rate identified . . . during the arbitration" and was "specifically referenced" in the Award.  <u>Id.</u> at 6.  Here, again, Peru overstates the case.  The footnote in the Award that Peru references states only that the "parties' damages experts each used the interest rate stipulated by SUNAT to adjust calculations in their analysis," which in this case was the interest rate in force prior to the enactment of Law 29191.  <u>See</u> Award, ¶ 488 n.45.  Nothing in the Award, however, suggests that this observation modifies or qualifies the plain language of the Award, which provides for damages in the amount of $18,330,746 "plus simple interest from June 15, 2007, calculated using the actual interest rate(s) stipulated for that period by SUNAT (<i>i.e.</i>, the interest rate(s) SUNAT credits to taxpayers on tax refunds)."  <u>Id.</u>, ¶ 488.  The question, therefore, is what the stipulated rate is.  By pleading that Peru has not paid interest at the correct rate, as required by a concededly final arbitration award rendered pursuant to a binding arbitration agreement between the parties, DEI has "'giv[en] [Respondent] fair notice of what the claim is and the grounds upon which it rests.'"  <u>Twombly</u>, 550 U.S. 544, 555 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see also</u> <u>Waggoner v. Flack</u>, 188 U.S. 595, 602 (1903) (considering failure to pay interest a valid basis for breach-of-contract claim).  As such, Petitioner has stated a claim on which relief can be granted.

  B.  <u>Remand</u>

Peru argues, in the alternative, that the case should be remanded to the ICSID Tribunal for clarification because the underlying award is ambiguous inasmuch as the appropriate interest rate cannot be determined. See Mot. at 7. While conceding that judicial review of arbitration awards is limited by design, Peru maintains that remand may be appropriate under certain circumstances, including where the award is "ambiguous or indefinite." Mot. at 7 (quoting Am. Postal Workers Union v. U.S. Postal Serv., 254 F. Supp. 2d 12, 15 (D.D.C. 2003)). The Court finds, however, that the Award here is not ambiguous, making remand inappropriate.

Remanding an arbitral award is an exceptional remedy, "a procedure to avoid if possible, given the interest in prompt and final arbitration." Ethyl Corp. v. United Steelworkers of America, AFL-CIO, 768 F.2d 180, 188 (7th Cir. 1985). This Circuit has strongly cautioned against remanding arbitral awards, finding that in the "balance between . . . rooting out possible error and . . . assuring that judgment be swift and economical . . . the latter must generally prevail." Sargent v. Paine Webber Jackson & Curtis, Inc., 882 F.2d 529, 533 (D.C. Cir. 1989). Indeed, remand "frustrate[s] the basic purposes of arbitration: to resolve disputes speedily and to avoid the expense and delay of extended court proceedings." Fed. Commerce & Nav. Co. v. Kanematsu-Gosho, Ltd., 457 F.2d 387, 389 (2d Cir. 1972); see also Rich v. Spartis, 516 F.3d 75, 81 (2d Cir. 2008) (arbitration awards subject to very limited review "in order to avoid undermining the twin goals of arbitration") (internal citation omitted).

Although remand is strongly disfavored, courts have the authority to remand if the award itself is ambiguous or "fails to address a contingency that later arises." Green v. Ameritech Corp., 200 F.3d 967, 977 (6th Cir. 2000). Ambiguity, however, requires something more substantial than a disagreement between the parties. Rather, the award must be "so ambiguous that a court is unable to discern how to enforce it," Telenor Mobile Comms. AS v. Storm LLC,

351 F. App'x 467, 469 (2d Cir. 2009), with the arbitrator's intent "hopelessly difficult" to determine. Ethyl Corp., 768 F.2d at 187; see also U.S. Energy Corp. v. Nukem, Inc., 400 F.3d 822, 830 (10th Cir. 2005) (remand appropriate where description of "purchase rights" too vague to permit valuation); Hyle v. Doctor's Assocs., Inc., 198 F.3d 368, 371 (2d Cir. 1999) (remand appropriate where award ambiguous as to which respondent liable).

Peru contends that the Award here is ambiguous for two reasons. First, it posits that the passage of Law 29191 was a "contingency that later [arose]," requiring clarification to address whether or not the interest rates it calls for should be applied. See Mot. at 9. Second, it argues that even if the Tribunal intended the new provisions of the Peruvian tax law to apply, "[t]here are significant questions of how the Tribunal would have applied those new provisions to this case." Id. The Court finds both of these arguments unavailing and will address them in turn.

The Award states that interest is to be "calculated . . . using the actual interest rate(s) stipulated for that period by SUNAT for refunds to taxpayers." Award, ¶ 488. By declining to specify a particular interest rate, the Award appears to contemplate that the rate may well vary for any number of reasons. Although Peru suggests that such a change in the law was an unanticipated contingency, the plain language of the Award allows for the interest rate to fluctuate freely. The Court declines to follow Peru's roundabout method of interpretation, which infers from the Tribunal's silence about amendments to the tax code that its true intent was contrary to the plain meaning of the text. See Harrison v. PPG Indus., Inc., 446 U.S. 578, 592 (1980) ("In ascertaining the meaning of a statute, a court cannot, in the manner of Sherlock Holmes, pursue the theory of the dog that did not bark."). Given that the plain text of the Award can only mean that the Tribunal intended interest to be calculated at the SUNAT rate for the relevant time – whatever it might be – the Court sees no reason to look further. Such a rule of

interpretation, of course, holds for contracts, judgments, and statutes. See, e.g., Travelers Indem. Co. v. Bailey, 557 U.S. 137, 150 (2009) ("where the plain terms of a court order unambiguously apply . . . they are entitled to their effect"); Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) ("when the words of a statute are unambiguous . . . this first canon is also the last: 'judicial inquiry is complete'"); In re Fitzgerald Marine & Repair, Inc., 619 F.3d 851, 859 (8th Cir. 2010) ("Where the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe [it accordingly].").

     Peru's next claim is that the case should be remanded because it is unclear how the Tribunal would have applied amended Article 38. As amended, Article 38 of the Peruvian Tax Code calls for two interest rates to be used in refunds to taxpayers. See Liu Decl., Exh. A (Translation of Law 29191). The TIM or interest-in-arrears rate is to be paid for any overpayments "made as a consequence of any document issued by SUNAT." Id. For "any other excessive payment," the rate shall be "no lower than the average deposit rate for the market for any other excessive payment." Id. Peru contends it is unclear which rate the Tribunal would have applied. On this issue, once again, the Court finds the Award could not be clearer. The Tribunal plainly states that "[DEI] has indeed sustained a loss as a result of SUNAT's assessment against Egenor." Award, ¶ 457 (emphasis added). As a result, the only reasonable reading of the Award is that the "actual interest rate(s) stipulated for that period by SUNAT for refunds to taxpayers" is the rate used for "payment[s] . . . made as a consequence of any document issued by [SUNAT]."

     Peru further maintains that DEI's loss does not qualify for the TIM rate because the Tribunal noted that "[DEI]'s damages are not identical" to DEI Egenor's. See Award, ¶ 458.

This argument is a red herring. The next paragraph of the Award goes on to clarify that the damages differ only in amount, rather than in cause. See id. ("The Tribunal will award to Claimant the proportion of the losses sustained by DEI Egenor that reflects . . . the historical level of dividends paid by DEI Egenor to its shareholders . . . multiplied by [DEI]'s percentage ownership."). Under amended Article 38, however, only the cause of DEI's damages is relevant, not the amount, nor the precise flow of funds between DEI and its subsidiary. As the Award is clear on its face as to the cause of DEI's damages – and thus, which interest rate should apply – the Court finds Respondent has demonstrated no ambiguity sufficient to warrant the exceptional remedy of remand.

### C. *Forum Non Conveniens*

Finally, Peru argues that if the Award is ambiguous and requires judicial – rather than arbitral – resolution, the Court should dismiss the case under the doctrine of *forum non conveniens*. See Mot. at 11. In Peru's estimation, the issue is ultimately "a dispute about the meaning and application of Peruvian law," and it should be decided by a Peruvian court. Id. Because the Court finds that the Award is not ambiguous and requires neither judicial nor arbitral clarification, it need not reach this issue.

### IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous ORDER this day denying Respondent's Motion to Dismiss and setting the case for a status hearing.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  September 14, 2012